*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* M. BUGGS, Minor.

UNPUBLISHED
April 20, 2023

No. 361798
Genesee Circuit Court
Family Division
LC No. 19-136367-NA

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights[1] to MB under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(g) (failure to provide proper care and custody despite being financially able to do so); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[2] We affirm the trial court's finding that statutory grounds existed to terminate respondent's parental rights and that the DHHS made reasonable efforts for reunification. However, because the trial court did not address MB's relative placement in its determination of best interests, we are required to reverse and remand for further proceedings.

## I. BACKGROUND

This case arose in October 2019 after the Department of Health and Human Services (DHHS) filed a petition to take jurisdiction of MB pursuant to MCL 712A.2(b)(2) (unfit home environment) and to remove MB from the care and custody of her mother. The petition alleged that MB was born showing signs of withdrawal as her mother used marijuana and fentanyl during her pregnancy. The petition also alleged that respondent had a criminal history that included a felony conviction for possession of a controlled substance on September 18, 2019.

---

[1] MB's mother voluntarily consented to the termination of her parental rights. She is not a party to this appeal.

[2] Although respondent asserts in his statement of questions presented that the trial court also found grounds for termination under MCL 712A.19b(3)(a)(*i*), (a)(*ii*), and (c)(*ii*), the trial court addressed only MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j).

Respondent signed an affidavit of parentage and was named as a respondent in an amended petition that was filed by the DHHS on June 3, 2020. The petition alleged that respondent was in prison, his earliest release date was June 9, 2021, and he was unable to provide care and supervision for MB. On June 11, 2020, the court ordered the removal of MB, and the DHHS placed MB with her maternal grandmother. On October 6, 2020, respondent entered a plea of admission to the allegation that he was unable to provide proper care and custody for MB while he was incarcerated. The trial court accepted respondent's plea and took jurisdiction of MB as to respondent. The court ordered that respondent complete a psychological evaluation, participate in parenting skills training, complete substance abuse treatment through his probation, complete random drug screens through his probation, and obtain housing and employment assistance.

In October 2021, the DHHS filed a supplemental petition requesting that the court terminate respondent's parental rights to MB. The petition alleged that the DHHS referred respondent to the "Judson Center, Parent Partner program" to assist with housing in November 2020 and January 2021, but he was terminated from the program on both occasions because he was noncompliant. The petition further alleged that respondent was also referred to "Spectrum Family Skills" to assist with housing and employment in March 2021, but his referral was withdrawn due to his noncompliance. The petition also stated that respondent failed to attend parenting skills classes, failed to maintain stable housing, and failed to provide the DHHS with any verification of a legal source of income since the beginning of the case. The petition alleged that respondent missed 58 scheduled visits with MB, left early during four scheduled visits with MB, and slept for one hour during a scheduled visit. It further stated that respondent was out of compliance with his parole or probation on December 1, 2020 due to new criminal charges— respondent was arrested on November 30, 2020, and released on January 12, 2021. The petition also asserted that respondent fell out of compliance with his parole or probation on May 11, 2021 for "assaultive behavior"—he was arrested on May 12, 2021, and released on May 21, 2021.

At the termination trial on May 25, 2022, testimony was presented by Lashonte Hairston, a caseworker for the DHHS who was assigned to respondent's case. Hairston testified that the parent agency agreement signed by respondent on October 6, 2020, required him to have a psychological evaluation, participate in parenting skills, have substance abuse treatment and random drug screens through probation, have housing and employment assistance, maintain suitable housing, and maintain a legal source of income.

Hairston testified that later on in the case, the court ordered respondent to complete drug screens and substance abuse treatment through the DHHS. Hairston testified that the DHHS took over these services because respondent would report that he was receiving substance abuse services through probation when he was not. Hairston stated that respondent completed a psychological evaluation, which recommended a psychiatric evaluation and outpatient treatment, neither of which respondent completed. Hairston further testified that respondent was referred to the Genesee Health System for outpatient substance abuse treatment, but respondent provided a letter to them stating that he did not need outpatient therapy. On the same date of the letter, Hairston testified that she received results from respondent's drug screens that were positive for cocaine and THC. Hairston asked respondent to call the Genesee Health System back and be honest with them regarding his substance abuse, but he never did. Hairston testified that respondent had three positive screens for cocaine in September 2021 and one positive screen for THC that same month; thereafter, respondent did not show for 48 drug screens.

In regards to visitation, Hairston testified that respondent missed 58 visits with MB, left early during four scheduled visits, and slept for one hour during a scheduled visit. Hairston acknowledged that visitations were interrupted for two periods while respondent was arrested during 2021 for assaultive behavior. Hairston also testified that respondent completed parenting classes with Connexions, but did not benefit from them. Hairston stated that the location of parenting visits changed from MB's maternal grandmother's house to either the DHHS or Orchards Family Services because of a dispute between the grandmother's live-in partner and respondent.

Regarding housing, Hairston testified that she only visited one of respondent's living locations during her assignment to the case, and that the house was not appropriate for a child. She stated that she provided respondent with paperwork describing all of the things he would need to have in place for the house to be appropriate. She testified that there were no beds or furniture in the home, it needed smoke detectors and childproof locks, and the other person living in the house needed a criminal-background check completed.

Hairston further testified that the only information she ever received from respondent regarding his income was some receipts and a certificate of doing business with a business name listed. When she asked respondent if he filed taxes for the business, he said that he did not. She stated that she gave respondent a booklet that demonstrated how to show sufficient income.

Additional testimony was presented by another caseworker for the DHHS, Kyle Whitman, who took over respondent's case in place of Hairston on March 4, 2022. Regarding substance abuse, Whitman testified that respondent was arrested and jailed from April 3, 2022 until approximately April 12, 2022 because he was pulled over and had cocaine and "six pills" in the vehicle. In addition, Whitman testified that respondent was driving a car that belonged to MB's mother, despite a no-contact order being in place between respondent and MB's mother due to domestic violence. Whitman further testified that respondent was attending substance abuse therapy at "New Paths" and had been offered five drug screens; respondent refused to test on two dates, was unavailable for one date, tested positive for THC and cocaine on May 2, 2022, and tested positive for THC, cocaine, and fentanyl on May 9, 2022.

Whitman also testified that he visited multiple places lived in by respondent. Whitman stated that the first apartment he visited had no washer, dryer, or stove; there was a mattress on milk crates, a large screen television in the bedroom, and a refrigerator that "you would see in a college dorm room." Whitman stated that he was advised by respondent's parole officer that the second residence respondent was living at had no running water, so she told him he needed to move. Whitman stated that he visited a third residence, where respondent was living at the time of the termination trial, and that it had no washer, dryer, or stove, and only contained an air mattress, television, and again a refrigerator the size of one "you would see in a college dorm."

Whitman acknowledged that respondent had submitted only four receipts as evidence of income in the over two years that the case was pending. Whitman also testified regarding respondent's parenting visits and stated that respondent had attended 8 of the 16 visits offered during his time with the case.

Finally, a parole officer with the Michigan Department of Corrections testified that she still conducted random drug screens for respondent and that he tested positive for cocaine and amphetamines the week prior to the termination trial.

Following the termination trial, the trial court found that there was clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*), (g), and (j) and that termination was in MB's best interests. The court reasoned that although respondent started outpatient substance abuse treatment in February 2022 and was actively attending treatment, respondent did not achieve any benefit from that service as evidenced by his three positive tests for cocaine in the three weeks before the termination trial. Additionally, the court reasoned that respondent failed to provide proof of stable income and failed to procure stable housing, despite reasonable efforts made by the DHHS. The court stated that it was not convinced that more time would help.

This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred because there was not clear and convincing evidence that the statutory grounds for termination were met. We disagree.

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the enumerated statutory grounds has been established. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). We review for clear error a trial court's decision that a ground for termination was proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Clear error exists when, even if evidence exists to support the trial court's decision, we are left with the definite and firm conviction that a mistake has been made. *Id*. at 41.

A court may terminate a parent's parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that (1) "182 or more days have elapsed since the issuance of an initial dispositional order," (2) "[t]he conditions that led to adjudication continue to exist," and (3) "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

In this case, the 182-day requirement was satisfied because the court took jurisdiction on October 6, 2020, and respondent's parental rights were terminated on May 25, 2022. After that time, as the trial court recognized, the conditions that led to adjudication continued to exist—respondent did not accomplish any meaningful change in his substance abuse disorder, his need for housing, or his need for stable income.

With respect to respondent's ongoing struggles with substance abuse, Hairston testified that after respondent was ordered to complete drug screens through the DHHS, he had three positive screens for cocaine and one positive screen for THC. Additionally, after respondent tested positive for THC on September 24, 2021, he did not appear for 48 drug screens. Further, Whitman testified that respondent was arrested and jailed from April 3, 2022 until approximately April 12, 2022, because cocaine was found in respondent's vehicle during a traffic stop. Although respondent completed an intake and attended eight appointments for substance abuse therapy at

"New Paths" between February 3, 2022 and May 17, 2022, respondent tested positive for THC and cocaine on May 2, 2022, and for THC, cocaine, and fentanyl on May 9, 2022. Lastly, respondent's parole officer testified that respondent tested negative for drugs when he completed two scheduled drug tests per month during his 90-day tether period, but respondent tested positive for various substances, including cocaine, when he was required to complete random drug tests after the tether requirement was removed. The parole officer also stated that respondent tested positive for cocaine and amphetamines the week prior to the termination trial.

Additionally, the evidence supported a finding that respondent continued struggling to maintain stable and appropriate housing. Respondent lived at various locations throughout the course of the trial court proceedings. However, none of respondent's living locations were found to be appropriate for a child. Both of respondent's caseworkers testified that respondent's living locations lacked beds, furniture, smoke detectors, and essential appliances such as a stove.

Likewise, the evidence supported a finding that respondent failed to provide evidence of stable income. Whitman testified that respondent had only submitted four receipts—between February 2021 and April 2021—as proof of income during the two-year case.

Finally, the trial court reasoned that, given respondent's lack of progress in resolving his substance abuse issues and in obtaining a stable income and housing in the two years that the case was ongoing, it was unlikely that he would rectify these ongoing problems within a reasonable time, given MB's young age. In light of respondent's failure to accomplish any meaningful change in the conditions that led to adjudication by the time of the termination trial, we find that the trial court's conclusion in this regard was not clearly erroneous. Accordingly, based on our review of the record, we are not definitely and firmly convinced that the trial court erred when it found by clear and convincing evidence that termination was appropriate under MCL 712A.19b(3)(c)(*i*).[3]

## III. REASONABLE EFFORTS

Respondent argues that the DHHS set respondent up for failure by not adequately addressing his drug addiction, setting him up with an elaborate system of services, and placing MB with a relative located an hour[4] away from respondent and requiring him to travel that distance for visits. We disagree.

A party preserves an issue for appeal if the party raised the issue before the trial court. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). "In order to preserve an argument that [the DHHS] failed to provide adequate services the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, ___ Mich App ___, ___;

---

[3] "Because one statutory ground for termination was established by clear and convincing evidence, we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

[4] We note that respondent disagreed with the DHHS that Caro was located one hour away from his residence during the termination trial. Respondent states in his brief on appeal that the location for visits was an hour and a half away from his residence.

___ NW2d ___ (2022) (Docket Nos. 358502 and 358503); slip op at 2 (quotation marks and citation omitted). This Court stated in *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), that a respondent must object to the provision of services when the trial court adopts a service plan. "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Atchley*, ___ Mich App at ___; slip op at 2. However, in this case, respondent failed to object to the services that were offered before the termination trial, so his reasonable-efforts argument is unpreserved. We review unpreserved issues for plain error affecting substantial rights. *In re TK*, 306 Mich App at 703. In order to establish plain error, a party must show that an error occurred, the error was clear or obvious, and the error affected the party's substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

The DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). The DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. While the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondent[] to participate in the services that are offered." *In re Atchley*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *Id.* at ___; slip op at 3 (quotation marks and citation omitted).

In this case, the DHHS made reasonable efforts to provide services that addressed respondent's substance abuse problem, but respondent failed to properly participate in or benefit from the services. Respondent was ordered to complete drug screens through his probation, and later, through the DHHS, and he was ordered to complete substance abuse treatment. Instead of attending outpatient substance abuse treatment through the Genesee Health System, respondent submitted a letter to the Genesee Health System stating that he did not need outpatient treatment. Yet, on the day that respondent submitted this letter, Hairston received results from respondent's drug screens that were positive for cocaine and THC, undermining any notion that respondent did not need outpatient treatment. Additionally, Whitman testified that while respondent was completing substance abuse therapy, he continued to test positive for THC, cocaine, and fentanyl. Respondent argues that the DHHS "knew or should have known, and eventually but too late did know, that he had a serious addiction problem requiring residential treatment." However, given respondent's refusal to comply with and benefit from outpatient substance abuse treatment, this Court has little reason to believe that he would have complied with or sufficiently benefited from a residential treatment program. The DHHS made reasonable efforts to address respondent's substance abuse problem, but respondent either failed to comply or demonstrate that he sufficiently benefited from the services.

As previously stated, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85. Thus, the DHHS not only offered services to respondent for his substance abuse issue, but also referred respondent to the "Judson Center, Parent Partner program" to assist with housing in November 2020 and January 2021, but he was terminated from the program on both occasions

because he was noncompliant. Respondent was also referred to "Spectrum Family Skills" to assist with housing and employment in March 2021, but his referral was withdrawn due to his noncompliance. In addition, the DHHS referred respondent to parenting classes and Hairston testified that respondent completed the classes with Connexions, but did not benefit from them. Therefore, the DHHS also made reasonable efforts to assist respondent with housing, employment, and parenting skills, but respondent was either noncompliant or failed to benefit from the services. The services offered by the DHHS were not (as respondent alleges) an "elaborate system" created to make respondent fail, but were offered to help him address the conditions that led to adjudication so that he could be reunited with MB.

Finally, contrary to respondent's assertions, the DHHS did not set respondent up for failure by placing MB with a relative located about an hour away from respondent's residence. Respondent contends that when parenting time was at a DHHS location in Flint[5], close to where he lived, his visitation record was good. However, the DHHS did as they were required and investigated placement options for MB, including respondent's brother and MB's maternal grandmother. Hairston testified that MB was placed with her maternal grandmother in Caro, Michigan, because the other individuals explored by the DHHS "were not appropriate due to their criminal background." Respondent reported to the DHHS that he did not want visits to be at MB's maternal grandmother's house and also got into a dispute with maternal grandmother's live-in partner. The trial court then ordered visits to be supervised at either a DHHS facility or at Orchards Family Services. Respondent's visits with MB were then scheduled to be at Orchards Family Services in Caro. Respondent was eventually dropped from Orchards Family Services for noncompliance with visitation. The DHHS did not set respondent up for failure as it investigated all placement options and the only available placement without a criminal background was MB's maternal grandmother, who happened to live about an hour from respondent. When visits were moved to Orchards Family Services in Caro, that location, although it is not clear from the record, was presumably chosen for the convenience of MB, who also was required to travel for visits with respondent. Respondent has failed to show that an error occurred.

## IV. BEST INTERESTS

Respondent argues that the trial court erred by determining that termination of parental rights was in MB's best interests. We conclude that the trial court clearly erred when it found that terminating respondent's parental rights was in MB's best interests without first considering MB's relative placement.

Once a "court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019). "[W]hether termination of parental rights is in

---

[5] It is not clear from the record exactly when or how often respondent was offered visits with MB at a DHHS location in Flint.

the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

When a trial court considers the best interests of the child, it must place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The court "may consider the child's bond to the parent, . . . the parent's parenting ability, . . . the child's need for permanency, stability, and finality, . . . and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Additionally, "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Id*. at 43 (quotation marks and citation omitted). "[A] child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)." *Id*. (quotation marks and citation omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and *requires reversal*." *Id*. (emphasis added). See also *In re Mason*, 486 Mich 142, 165; 782 NW2d 747 (2010). We are required to reverse because the trial court rendered its cursory best-interests determination without addressing MB's relative placement.

## V. CONCLUSION

We affirm the trial court's determination that statutory grounds for termination were established by clear and convincing evidence. Further, we affirm the trial court's finding that the DHHS made reasonable efforts to reunify respondent with MB before seeking termination of his parental rights. However, we reverse the trial court's best-interests determination and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica